The next case is 24-4054, Pomeroy v. Utah State Bar. Please proceed. Good afternoon, Your Honors. Scott Day Freeman on behalf of Appellant Ms. Amy Pomeroy. May it please the Court. Excuse me. In its order denying Ms. Pomeroy's motion for summary judgment and granting the Bar's motion for summary judgment, the District Court applied the wrong legal standard. As the Court said in its order,  This Court is not persuaded by Ms. Pomeroy's argument that the Court should apply exacting scrutiny to the challenged Utah Bar activities. End quote. That's reversible error. What the Court did is it interpreted Keller and the Abboud case, the case on which Keller stands, to effectively apply a rational basis standard for Ms. Pomeroy's freedom of association claim. I mean, that's what those two cases more or less say, isn't it? With respect to the compelled speech claim, which Keller addressed, it does provide a more liberal standard. But the District Court applied it to the compelled association claim, which Ms. Pomeroy brings here. And that's part of our argument. That's the reversible error. Right. And then that brings us to our case, Schill, I think is the name of it, which relied heavily on Keller and seemed to not propose this exacting scrutiny standard that you're wanting to advance. Well, Schill was postured a little differently. Schill was at the motion to dismiss stage, the pleading stage. So what this Court did in Schill is it affirmed the dismissal of the compelled speech claim because it viewed Keller as controlling there. But it reversed on the plaintiff's compelled association claim because Keller does not address the freedom of association claim. That is fertile ground. So it was important. Or did it reverse it because there was a need to determine whether the activities were germane? Well, ultimately that's what would happen. I think what this Court did is made a preliminary assessment in terms of the pleading standard. Did the plaintiff in Schill put enough in his complaint to arguably invoke this freedom of association claim? And there it was that the plaintiff there had challenged some bar publications and attached a couple of them to that complaint. And this Court reviewed those publications and determined, well, under the motion to dismiss standard, there's enough there to survive dismissal and remanded it to the district court for further proceedings. Okay. Let me ask you this because the analysis on this whole issue, it just seems circular to me. But so we have a state bar. They publish a journal. It publishes a political article. Let's just, low-hanging fruit, undisputably political. Nobody's claiming that it advances the practice of law or relates to the regulation of lawyers. And the Court has to look at it. And the argument is it's not germane. And so how is that decision made? How closely does it have to relate to the purpose of the mandatory bar? Does it have to meet an exacting standard of relation? Or can it be more liberal or rational and we can look at it more broadly? Certainly in the context of an associational claim, it must be exacting. It must inherently and directly relate to the bar's regulatory purpose. That's what the Fifth Circuit has said in McDonald, in Boudreaux, using those terms. And I guess is that part of the whether the article is germane analysis or are they somehow intertwined? Yeah, we're sort of left with this germaneness construct that flows probably back to the Abood case, which Janice overturned. But courts, even applying the, even analyzing the freedom of association claim, have nevertheless drawn from Keller for a couple of things. One is this whole germaneness construct. The other is, well, what is the state's interest here? And Keller did say something about that in the context of the compelled speech claim. Keller did, using the standard that was in place at the time, did note that a bar's activity can range on a wide spectrum. And it might be very easy to determine conduct and evaluate conduct at either end of that spectrum. I think the examples were advocating for a nuclear freeze, which was something of note in 1990 when Keller was decided. That's an easy call, while promulgating ethical rules or the disciplinary function of lawyers is another easy call. But the court kind of said there's going to be some line drawing because there's this broad spectrum. But when we look at the associational claim, we have this higher standard. We have at least exacting scrutiny. That focuses the inquiry at one end of the spectrum. That's where the line needs to be drawn. So you want to get rid of whether something's germane, as discussed by Keller? I don't think that's the, well, I guess linguistically it facilitates communication to use that term. But I think it's germaneness viewed through the lens of the exacting scrutiny. Okay, so that was, you have just landed on where I've been trying to figure out what we're talking about here. So when we, in this context, when we look at whether something is germane, we look at it with exacting scrutiny as opposed to looking at it to determine if there's some kind of rational relationship between the bars function and the article. Correct. And back to the district court's order, as evidence of the application of the lower, very low bar that was set in the court's evaluation of the bar's conduct, the order on page 19 refers to, and this was discussing one of the article's footed issue, well, it's quote, reasonably related to the advancement of the acceptable goals of the bar, unquote. There's another example on page 16 where, discussing another article, the district court said, well, it relates, quote, unquote, relates to, quote, the core function to advance the interest of the profession. That's the rational basis test here. And that's where the district court got the analysis wrong. Counsel, can I ask you about the review that we apply, regardless of the standard, to examples that were given about activities of the bar? Because they strike me as maybe categorically different, meaning that lobbying activities, for example, the bar manager take, compared to the journal. And there seems to be a lot of dispute about the journal, but why would we or any court parse through a whole bar journal to see if there's any particular article or ad or sentence that may not be germane, and therefore sort of wipes out the journal? The journal just strikes me as a magazine published by the bar with a disclaimer that says, all of the articles published in herein are not necessarily the views of the bar, it's just a forum for ideas. So why should we or any court engage in this exercise of combing through the journal, searching for any germaneness or non-germaneness? Well, we're certainly not attempting to burden the court. I know we've cited a lot of examples in this case, but our client can look nowhere else than the court for defense of her constitutional right here. You mentioned the publications in the journal that there's a disclaimer in there. This is not a compelled speech claim here. This is a freedom of association claim here. The disclaimer means nothing in that context. Why not? Because the bar chooses to publish what it wants to publish. It chooses the articles that it published, and it's not important for an associational claim that any third party perceives those as Miss Pomeroy, that Miss Pomeroy is in agreement with it. So it's the exercise of editorial control over the journal itself that means the disclaimer has no function. Well, it's Miss Pomeroy's personal right of freedom of association. Membership in the bar, this was said by the Fifth Circuit in McDonald, membership itself is communicative, and Miss Pomeroy has no choice. She is compelled to be a member of the bar. The bar publishes the magazine. The bar decides what goes in the magazine, and she has no option. She has no ability to disassociate with that. We discussed this a little in our reply brief. There's a little bit of fundamental difference between the compelled speech right, which in some instances can be redressed with a disclaimer, because compelled speech involves communication and debate and whatnot, while the associational claim cannot because of the very nature of the right. And that's another reason why it makes perfect sense to apply a higher level of scrutiny with respect to an associational claim than perhaps a compelled speech claim. And that stems from the fact that when Keller looked at the compelled speech claim, it adopted this Hudson procedure whereby, well, if we say something that goes outside the lines, you can object, and there's a process, and perhaps you'll eventually get your portion of the money that subsidized that speech back. Refund does not redress an associational injury. That means we need higher scrutiny with those types of claims. Another example of that is the Crow case, which was the challenge to the Oregon bar. In that case, the plaintiffs brought both compelled speech and association claims, and at least one of the plaintiffs did object to the bar on some of its publications. The bar, of course, as they all, you would expect the bar to do, says, no, everything we do is okay, but we don't want to fight with you over it, so we'll refund you your $1.17. And that takes care of, now your compelled speech claim, that redresses it. We disagree that that's appropriate because it's sort of, the bar has already used the money. It's been lent to the bar, effectively. But that mechanism doesn't exist with an associational claim. So what I'm hearing is your associational claim is really your winner, whether it be how you get around Shell, or the examples of the disclaimer in the journal, or even the Hudson procedures, because your answer to all those questions seems to be it doesn't apply to associational claims, so that's the one we should be focused on. Correct, Your Honor. And Ms. Palmore has put before the district court and this court a raft of examples of where the bar has strayed outside the lines significantly. On the legislative front, just one, going back to Shell on the legislative front, this court and Shell, when looking again at that case in the motion to dismiss stage, one of the allegations was, well, the Oklahoma bar engages in non-germane activities with respect to its legislative activities. And this court found that allegation on a motion to dismiss standard was insufficient because it didn't say the type of legislative activities. And this was a footnote in Shell that said, what we need to know, basically, is did the bar oppose the legislation, support it, try to amend it, introduce its own draft. Ms. Palmore has identified, not only in her complaint, but after discovery, numerous instances of legislative, very active legislative activity, with great precision, looking to the bar's own website, where it lists all the bills, and it says, we oppose, we support, and identifies the bill by bill number and year, the title of the bill. In our papers, we've added a little more gloss to sort of help explain the title of the bill. But there are numerous examples there where the bar has gone outside the line, the bar has weighed in on bills related to Utah laws, relating to the term of confinement for a juvenile offender to a secure facility, and adding a substantive provision that the term of confinement can't be more than what an adult would get, who is similarly charged. That has nothing to do with the regulation of lawyers or the lawyers' role in improving the quality of legal services. And there's many others. I'm sorry, I know you're getting short on time, but is germaneness a question of fact or a question of law? It's a question of law. Ultimately, this court will do what it did in Shell and look at the evidence, would do the same thing that the Fifth Circuit did in McDonald, Goudreau. In Crow, the court did that. And in Crow, I should point out, there was also legislative activity at issue there, but the court stopped after evaluating one page published in one issue of the Oregon Bar Journal published in 2017 and said the content of that page was outside the lines, non-germane. Therefore, the plaintiff's rights had been violated, requiring reversal and remanded the district court for a remedy. May I ask one question? Of course. Could a plaintiff make an associational claim without regard to the germaneness question? That is, could she say, I simply do not want to associate with the kinds of lawyers that are involved in the bar association, and you are forcing me to associate with people I don't like. And I'm not talking about any germane statements or non-germane statements, but I disagree with that association, and you can't force me to take it. I assume she's not making that broad a claim, but could she? Yes, and I think others have made that claim, and that is not the claim here. The claim here is that Ms. Palmer is claiming her associational rights are violated because of the conduct and cites instances of crime. But the conduct, then, is I'm only not wanting to associate because they are forcing me to join substantive statements that I don't agree with, because my speech rights, basically, or my associational rights, related to speech content, are being violated. Yes, Your Honor. But she wouldn't necessarily need to say that's the reason. Well, I think to perhaps survive a motion to dismiss, like this court ruled in Shell, she's going to have to give some reasons, and she has in this case. So the associational rights are not absolute. They are conditioned upon a reason that your constitutional rights are somehow being violated. So it all comes back, then, to germaneness, probably. That is the type of claim that Ms. Palmer has brought here. If we think that the bar has only acted in a germane way, she loses. Germane way in the context of looking at it with a proper level of scrutiny. With a proper level of scrutiny. And does that require 100% purity, even better than ivory soap? Or could you take any, do you believe in a de minimis exception for an occasional mistake? No, there is no recognized de minimis exception. There is a case that does recognize de minimis. Not in our circuit, I think, but there is some authority for de minimis. I'm not aware of it. I know the Fifth Circuit rejected that argument was made in the Fifth Circuit. It expressly rejected it. There is no de minimis exception to the First Amendment. Not to endanger us of going down the path from last case, but would Lathrop suggest that there could be some kind of de minimis standard? No. I mean, Lathrop was a fractured opinion that a lot of courts, that it was difficult to define the ultimate outcome of that. I think the ultimate thing you can say about, that Lathrop said, was states can't compel lawyers to pay dues. Okay. That's it. It would be unmanageable to try, and very difficult for a plaintiff to allege under Rule 11 that the non-germane conduct constitutes a majority of the activities. How does one determine what the majority of activity is? Right. And certainly the Ninth Circuit in Crow, one page of one issue of a journal published years ago, in Boudreau, that case boiled down to about 15 social media posts. It would be very easy for one of those courts, even in Shell, looking at whether it had been pled properly, two law journal articles. I mean, this court could have said, okay, whether they're germane or not doesn't matter, that's only two. Okay. Let's cut it off here and see if Judge Federico has a question. All right. I have none further. Judge Abel said he did what lawyers do. One more question, Judge, and then you have several afterwards. But anyway, thank you, Counsel. Mr. Baldwin. Thank you, Your Honor. Good afternoon. Dick Baldwin on behalf of the Utah State Bar. May it please the Court. I do want to get to the points you were just describing, but I think it would help to set the stage a little bit for what is and what is not before the Court. So these integrated bar association challenge cases tend to fall into two camps, and it falls entirely based on where the germaneness determination comes out. Where there is entirely germane conduct, every court concludes that there is no constitutional violation for compelled speech or compelled association because it survives whatever level of scrutiny would apply. The other cases are where there has been a finding of some non-germane conduct. And the Ninth Circuit and the Fifth Circuit have recently faced some of those cases. And those implicate the unresolved question that Keller identified in light of the shoulders it was standing on, which was the Lathrop decision and then Keller, that after that what was undecided was what happens under the First Amendment. And that is that the association engages in some non-germane conduct. For the associational purposes, that was the unresolved question. And just a quick side note before I continue to lay out what is and isn't before the Court. Judge Ebell hit right on the point, which is that the association claim really is sort of the key here, but Lathrop expressly decided the association point, and it concluded that in the abstract, the concept of being compelled to join the bar without non-germane conduct, but just as a general matter, that was Lathrop's holding. And this Court in Shell recognized that. It said, reading from page 1187 of the opinion, although the Court did not issue a majority opinion, seven justices agreed that the First Amendment right to freedom of association did not prescribe mandatory bar dues or membership. So the notion that the association claim is the foot in the door that's going to blow all this apart, we're not riding on fresh snow here. There's not fresh snow. The Lathrop decision addressed that question in the general proposition. Keller relied on that, and all of the courts have recognized that. So the only question is whether a plaintiff can find some non-germane conduct, and that may open the door to deciding effectively what's the remedy that's going to be appropriate here. And that's what the Fifth Circuit and Ninth Circuit have been grappling with, and that's where the exacting scrutiny really comes into play. But I want to put a pin in that because I want to continue talking about what is, in fact, before the Court. The opening brief, in trying to figure out what the target was that I was needing to respond to was a bit difficult. And there's a good explanation for that that I would submit explains it, and that is that significant portions of the argument section were copy and pasted from the opening motion for summary judgment. And so it's not a surprise that the opening brief doesn't – you don't walk away from the opening brief with any real idea of what the district court decided, what its analysis was, what the evidence was that it relied on, and how it reached its conclusion, and therefore how it actually committed an error, other than at the very stratospheric level where there are challenges to only the applicable standard and not in any way the application of that standard. I presume you're going to tell us? Well, of how it's – What I don't want to do is I sense some tension in this briefing, and I don't want to get into how bad their briefing was discussion. I'd like you to go ahead and make your argument on the merits. No, absolutely. Fair point. I'm trying to explain why some things are helpful from their clarification and their responses in the motion briefing to point us at just the standard. And that's what we've heard today is we're really talking about what's the germane standard. And that's the thing I want to put a pin in. I really want to just quickly get to the other points are the refund claim, the opt-in, the adequacy of the other information. Those things all fall into that same bucket of they're not being inadequately brief or failing to meet their burden on appeal to be able to challenge the district court's reasoning for those, which leaves us with the germane standard. And what I would address to the court is in addition to the point that I just made about the Lathrop decision having undermined this point about the association claim having not been resolved in any context, Shell itself expressly decided this. There were claims, their May 2018 article that is within the section describing the freedom of association claim. The court looked at I think it was six different instances of conduct. And it remanded based on two of them. So the other four under the association claim, the court evaluated under the germane standard, not under some exotic version of germaneness or some new version of germaneness. It was the Keller standard. And Shell applied that and affirmed the dismissal based on those. The May 2018 article specifically is responding to criticism of Oklahoma's merit-based process for selecting judges. And the Tenth Circuit concluded that even though that had been the basis for a claim for violation of the freedom of association, that based on its conclusion that that was germane, it affirmed the dismissal of that claim. Secondly, a lot of the argument about what the standard is relies heavily on the Boudreau decision. And I would invite the court to take a close look at the second Boudreau decision. This is where the court had at times described that the appropriate question for germaneness is not Keller's description that it should be reasonably related or necessarily or reasonably incurred expenses should be reasonably incurred in furtherance of the two purposes. But instead, my friend asserts that the Fifth Circuit teaches that the standard is instead whether the conduct is inherently tied to the legal profession in some way. But reading Boudreau, it doesn't really say that. Boudreau at page 631 says that to be germane, bar association speech must be reasonably related to the bar association's purposes of regulating the practice of law or improving the quality of legal services. That's precisely the test that we assert applies. Later, it is talking about explaining its conclusions and its analysis of how to apply this Keller standard. And at one point, it describes the inherent relationship that it acknowledges as a way of describing how it's reaching its conclusion. Again, towards the end at page 635, it reiterates that speech must be reasonably related to the regulation or improvement of legal practice. So even the high watermark that Ms. Pomeroy has asserted as the basis for concluding that somehow exacting scrutiny and germaneness interact in some meaningful way rather than germaneness being a threshold question that leads to the question of what essentially the result will be under the exacting scrutiny framework, that case doesn't agree with her. It concludes that the standard that every court has recognized and applied continues to apply, which is Keller's germaneness test, that the conduct must be reasonably related to regulating the practice of law or improving the quality and availability of legal services. Next slide, please. Let's see. I would also urge the court to review not just Shell and what I just described from Boudreaux, but also Crowe 1, that first decision also undermines the notion that exacting scrutiny in some way has displaced the germaneness standard. Instead, Crowe 1 seems to contemplate that germaneness exists within the context of exacting scrutiny and that really we're talking about a semantic distinction, that exacting scrutiny may be the overarching framework, but the lens that we're looking through is germaneness, and that hasn't changed because something, so long as the bar has engaged in germane conduct, it would survive exacting scrutiny. Counsel, Ms. Pomeroy had a list of bills that were before the legislature that said the bar took some legislative or lobbying activity towards. I read your response to say that most of those had not been put before the district court, I think, and so we shouldn't consider them, but are there only two bills that you would agree are, under our review, applying whatever test will save germaneness for purposes of this question, or what should we be doing in terms of legislative and lobbying activities? There are only the two that are before the court. The district court exercised its discretion to not consider the others because there was not adequate notice that those were the subject of their claims, and so no discovery was conducted on them. Even standing here today, I couldn't describe to you what those bills were entirely about, or I think more importantly, for purposes of conducting a worthwhile germaneness inquiry, is I have no concept of what the context was. I don't know what the district court's specific position was. I don't know if they did, in fact, like the lobbying relating to taxes, professional taxes. I don't know if, like in that circumstance, the state bar's conduct was very narrowly and strictly limited to only discussing what was inherent to the legal profession, which is only taxes on legal services. With all of that laundry list of bills, we had no opportunity to create a bill to really describe what the ultimate germaneness conclusion would be, and that's why the district court properly exercised its discretion to not consider those bills, especially the ones that showed up for the first time in the opening brief. That's certainly true as well. One other point that I would bring up is the suggestion has been made that we are asserting some sort of rational basis test for germaneness, and I think that that's inaccurate. I don't think that the germaneness inquiry is rational basis. I think sort of a very high-level response to that is that it would be very strange for rational basis to lead to so many determinations in the Fifth Circuit and Ninth Circuit of non-germaneness. That's not typically how rational basis would work. So the output of that test sort of tells us it's clearly not quite that deferential. But deference does play a role. We cited to the Seventh Circuit case in our brief, but, again, the Fifth Circuit, the circuit that Ms. Pomeroy has been relying on for her argument, it also has expressly said, both in McDonald and Boudreaux, that it will defer to State Bar's determinations as to regulating the practice of law. And so if there are no further questions, I think that would be... I have one more. I asked whether or not germaneness is a question of law or a question of fact. I understand that germaneness test is a legal test. But here my recollection is the district court found all the bar's activities before it were germane. When we're reviewing that decision, what standard review would you say we apply to it? The determination itself would be a de novo review. It is a legal question. There were no disputed facts. Ms. Pomeroy presented no facts that would create a factual dispute that would have precluded summary judgment on a factual dispute basis. And the courts appear to be uniform in concluding that that determination is a legal one. Thank you, Counsel. Thank you. Counsel will be excused. Oh, wait, we have any rebuttal time left? Okay. Counsel will be excused and the case is submitted.